J-S23012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                :            PENNSYLVANIA
                :
         v.            :
                :
                :
RYAN MCMUNUS           :
                :
        Appellant    :   No. 2432 EDA 2017

Appeal from the PCRA Order July 6, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001735-2012

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:               **FILED JUNE 08, 2018**

Appellant, Ryan McMunus, appeals from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, following an evidentiary hearing. We affirm.

The Commonwealth summarized the facts of the crimes at the guilty plea hearing, as follows:

> The facts and circumstances surrounding the plea this afternoon involve the shooting death of a 27 year-old male by the name of Shane Kelly, 27 years of age.
>
> The incident that is before the [c]ourt this afternoon that is the subject [of] the plea occurred back [in the] early morning hours of the 13th of November 2011, it was a Sunday, approximately12:30 a.m. in the vicinity of Berks and Thompson Street[s] in the [C]ity and [C]ounty of Philadelphia, Fishtown section of Philadelphia, 26th district.
>
> On the evening in question, the decedent in this case, Mr. Kelly, was with his girlfriend, Ms. Mary Elise Doyne. They were

_____
\* Former Justice specially assigned to the Superior Court.

walking down Berks Street towards Thompson. Ms. Doyne is, likewise, 27 years [of] age.

Mr. Kelly and Ms. Doyne were walking down Berks towards Thompson. They observed two individuals who would be identified as the defendants at the bar of the [c]ourt, [Appellant] and Richard Smith, walk[] past them. Immediately after walking past them, the two defendants turned, yelled, "This is a robbery" or, "Give up everything you have."

At that point the decedent turned around and was confronted by the two defendants. [Appellant] was in possession of what we believe definitely was a .25 caliber semi-automatic handgun, probably a Colt. He demanded everything in the possession of Ms. Doyne as well as Mr. Kelly.

During the course of the robbery, your Honor, a vehicle occupied by [a man named] Mr. Loftus was approaching the corner of Berks and Thompson.

At that time, during this robbery, Ms. Doyne stated that, "If this is a robbery, I am going to call 911." She had her phone in her hand, your Honor, because she just ordered a pizza; to wit, the decedent and his girlfriend were going to pick it up.

At that time, Ms. Doyne alerted the front seat passenger of the robbery. It was Mr. Loftus. All the while, your Honor, the decedent in the case refused to turn over any items and began to walk towards the two defendants, who began to flee.

The decedent, Mr. Kelly, began to chase both defendants down the street. Mr. Smith proceeded down Thompson. [Appellant], again, who possessed the gun, proceeded--made a left and proceeded down Hewson Street, 1300 block.

The decedent, Mr. Kelly, pursued [Appellant]. At that point Mr. Loftus, likewise, pursued. While giving chase, [Appellant] fired several shots, more specifically eight shots while running down the 1300 block of Hewson Street.

Decedent was struck three times: Once in the chest, leg and abdomen. Decedent went down, collapsed in the middle of Hewson.

Mr. Loftus pursued. Chased [Appellant] down Hewson, around a short block and back onto Belgrade Street and actually around that little area again before [Appellant] fled into a house on Belgrade Street.

The home was identified as his aunt's, who is Barbara Gill. Also in that house was his cousin, Eric Bernatovich, as well as a grandmother and young female.

[Appellant] fled up the steps, out the third floor to the second floor roof and out through the alley.

At that point police arrived. Mr. Loftus provided information to the authorities, as well as Ms. Doyne provided information to authorities.

Mr. Kelly was subsequently transported to Temple University Hospital on North Broad Street where emergency efforts were taken. Despite those efforts by emergency room personnel, your Honor, Mr. Kelly was pronounced [dead] at 4:48 a.m. His remains were transported to the Office of the Medical Examiner where Dr. Gary Collins conducted a postmortem on Mr. Kelly's remains.

He identified gunshot wounds to the chest, abdominal area and thigh. Dr. Collins would testify that as a result of his performing a postmortem examination, it would be his opinion, to a reasonable degree of medical certainty, that the decedent died as a result of multiple gunshot wounds. Manner of death was homicide. Both opinions are to a reasonable degree of medical certainty.

As the investigation progressed, Ms. Doyne was shown photo arrays and positively identified defendant Smith at the bar of the [c]ourt as the individual who participated in the robbery at Berks and Thompson Street.

The Commonwealth would also call Mr. Bernatovich, who would testify that he had a chance to see Smith shortly after the robbery and [he] admitted his involvement in the robbery. He would also testify, Mr. Bernatovich, to admissions made by the defendant at the bar of the [c]ourt, [Appellant].

Commonwealth would call Barbara Gill. She would, likewise, testify that she observed [Appellant] run into her home.

Warrants were approved, defendants arrested.

[Appellant], after being advised of his Constitutional rights by Detective [James] Pitts and Robert Hesser, admitted his involvement in this robbery and shooting.

Commonwealth would also call firearms investigator Welsh, who would testify that he positively identified all the casings as coming from the same firearm.

N.T. (Guilty Plea), 9/9/13, at 59–63.

Appellant entered a negotiated guilty plea on September 9, 2013, to one count each of third-degree murder, conspiracy, aggravated assault, and possession of an instrument of crime, and two counts of robbery.[1] The trial court sentenced Appellant in accordance with the plea agreement to thirty-two and one-half to seventy years of imprisonment. Appellant did not file a direct appeal.

On September 26, 2014, Appellant filed a timely *pro se* PCRA petition. On April 27, 2015, the PCRA court appointed counsel, who filed an amended petition on February 16, 2017. The PCRA court held an evidentiary hearing on July 6, 2017, where Appellant, his mother, and guilty-plea counsel testified. The sole issue at the hearing was whether Appellant timely requested counsel to file an appeal. Appellant's Brief at 7. Following the hearing, the PCRA court dismissed Appellant's petition. Appellant filed a timely notice of appeal to this

_____

[1] 18 Pa.C.S. §§ 2502, 903, 2702, 907, and 3701, respectively.

- 4 -

Court. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises one issue on appeal: "Whether the appellant timely requested his trial counsel to file an appeal." Appellant's Brief at 4.[2]

When reviewing the propriety of an order denying PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015); *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Robinson*, 139 A.3d 178, 185 (Pa. 2016). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Cousar*, 154 A.3d 287, 296 (Pa. 2017); 42 Pa.C.S. § 9543(a)(2). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. *Commonwealth v. Lippert*, 85 A.3d 1095, 1100 (Pa. Super. 2014).

While inartfully stated, and despite the manner in which Appellant has described his issue, reference to Appellant's PCRA petition makes clear that Appellant is asserting plea counsel's ineffective assistance for failing to file a

---

[2] The PCRA court addressed two additional issues raised in Appellant's Pa.R.A.P. 1925(b) statement. PCRA Court Opinion, 9/1/17, at 4–7. Because Appellant has not presented those issues in his appellate brief, they are abandoned, and we will not address them. Pa.R.A.P. 2116(a).

direct appeal. PCRA Petition, 9/26/14; Amended PCRA Petition, 2/16/17. When considering an allegation of ineffective assistance of counsel, we presume that counsel provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) petitioner was prejudiced by counsel's action or omission. ***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa. Super. 2018) (citing ***Commonwealth v. Pierce***, 527 A.2d 973, 975–976 (Pa. 1987)). "An [ineffective-assistance-of-counsel] claim will fail if the petitioner's evidence fails to meet any one of the three prongs. ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). Because courts must presume that counsel was effective, the burden of proving ineffectiveness rests with the petitioner. ***Commonwealth v. Montalvo***, 114 A.3d 401, 410 (Pa. 2015).

In his brief, Appellant posits a three-paragraph argument in which he asserts that he wrote multiple letters requesting plea counsel to file a direct appeal, but counsel never responded. Appellant's Brief at 12. Appellant maintains that he did not retain copies of the letters through no fault of his own. ***Id***. Appellant also alleges that he sent his mother to meet with plea counsel. ***Id***. However, contrary to our appellate rules, Appellant fails to cite any case law in support of his claim. ***See*** Pa.R.A.P. 2119(a) (providing that appellate briefs must contain "such discussion and citation of authorities as are deemed pertinent").

As noted *supra*, Appellant testified at the evidentiary hearing. He stated that he wrote to plea counsel multiple times within thirty days of his sentencing, requesting "everything under the sun, specifically direct appeal and reconsideration." N.T. (PCRA), 7/6/17, at 7, 9. Despite acknowledging that he was able to make copies of letters, he stated that he did not do so due to time constraints. *Id*. at 8. Appellant testified that he wrote to counsel "months afterwards" and asked for his case file, "when he finally sent . . . a copy of everything he had on my case. . . ." *Id*. at 9. Appellant was unable to state the address where he mailed his letters. *Id*. at 10.

Debra McMunus, Appellant's mother, also testified. When asked if she visited her son within thirty days after he was sentenced, she stated, "I believe so." N.T. (PCRA), 7/6/17, at 21. She testified she received a letter from Appellant asking her to contact plea counsel and request an appeal and to ask him to address a "separation order" regarding his co-defendant because its effect was to keep Appellant in the "hole." *Id*. at 22. Ms. McManus testified that counsel returned her telephone call "the next day." *Id*. at 24. She told counsel that Appellant wanted an appeal and that he would need to get court-appointed counsel because she "couldn't pay any more money." *Id*. at 23. Appellant's mother did not have a copy of the alleged letter from Appellant; she stated she "did not bring a copy." *Id*. at 26.

Plea counsel testified at the evidentiary hearing. He did not recall receiving any letters from Appellant until one year after Appellant entered his

plea, "way post appellate times." N.T. (PCRA), 7/6/17, at 33–34. The letters "didn't deal with the appeal"; rather, they concerned "problems with one of the detectives." *Id*. at 34. Plea counsel admitted to speaking on the telephone with Appellant's mother "after the 30 day period after the guilty plea." *Id*. at 36. Counsel testified that he did not recall if Ms. McMunus had told him she could not afford to hire him, as it was "[w]ell after" the thirty-day appeal period when counsel spoke with her. *Id*. at 38.

In *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011), our Supreme Court reiterated that the "PCRA court's credibility determinations, when supported by the record, are binding. . . ." Indeed, the *Spotz* Court explained the significance of credibility determinations in the PCRA setting as follows:

> A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. *See*, *e.g.*, *Commonwealth v. (Damon) Jones*, 590 Pa. 202, 912 A.2d 268, 293 (2006); *Commonwealth v. Santiago*, 579 Pa. 46, 855 A.2d 682, 694 (2004) (Opinion Announcing the Judgment of the Court) ("We are bound by the PCRA court's credibility determinations where there is record support for those determinations."); *Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 99 (1998) ("Just as with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding on this Court."). **Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made**; otherwise, issues of material fact could be decided on pleadings and affidavits alone.

*Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) (emphasis added).

The PCRA court stated on the record that both PCRA counsel and the Commonwealth were in agreement concerning one of the issues; "that is, this matter comes down to one of credibility." N.T. (PCRA), 7/6/17, at 47–48. The court explained on the record:

> [A] fact-finder is always pleased when there is some documentary evidence to support one side or the other. We don't have that here. It isn't essential, it is not dispositive, but the fact is there is nothing except the witness's testimony to support the position that a letter or letters were sent to [plea counsel].
>
> Even if a fact-finder was inclined to accept, in whole or in part, the notion regarding timeliness and the difficulty of copying a letter when time was of the essence, one has to apply that rational not once but six times.
>
> Of some concern to this [c]ourt is the fact that Ms. McMunus doesn't have the original of any of the letters [Appellant] sent to her asking that she intervene on his behalf with [plea counsel].
>
> There is either by a statement or by reference to the docket entries, or otherwise, evidence that [Appellant] may have been out of the hole as early as 10/2/13.
>
> Let's say the order was signed on the 2nd of October, 2013 and didn't get to the prison until the next day or the day after. It was still within the time period for filing an appeal.
>
> The credible testimony, to my mind, is that Ms. McMunus did, in fact, speak to [plea counsel] after the period in which a post[-]sentence motion and/or notice of appeal could have been filed.
>
> On the balance, considering the evidence I heard, the [c]ourt having been asked to make a credibility determination, I cannot credit either [Appellant's] or Ms. McMunus'[s] testimony as truthful.
>
> I accept [plea counsel's] testimony, and find that no such request was made in a timely manner for either a post[-]sentence motion or for direct appeal.

*Id*. at 48–49.

Before an attorney may be determined to be ineffective, a PCRA petition has the burden of proving that he in fact asked counsel to file a direct appeal and that counsel ignored this request. *Commonwealth v. Markowitz*, 32 A.3d 706, 715 (Pa. Super. 2011); *see also Commonwealth v. Harmon*, 738 A.2d 1023, 1024 (Pa. Super. 1999) (stating that a mere allegation will not suffice to prove that counsel ignored a defendant's request to file an appeal). Appellant did not carry his burden.

In dismissing the instant PCRA petition, the PCRA court "found the testimony of [Appellant] and his mother to be wholly lacking in credibility." PCRA Court Opinion, 9/1/17, at 8. There is ample support in the record for the PCRA court's findings. The PCRA court properly considered the testimony of both Appellant and his mother and noted that neither witness had copies of the letters they claimed to have written to counsel or, in the case of Ms. McMunus, received from Appellant. The PCRA court found instead, that plea counsel was believable, in that any contacts from Appellant or his mother concerning the filing of an appeal occurred well beyond the thirty-day appeal period.

Credibility determinations are solely within the province of the PCRA court. *Johnson*, 966 A.2d at 539. After review, we agree with the sound reasoning of the PCRA court, which is supported by the record, and affirm on this basis in concluding that the PCRA court did not err in dismissing

Appellant's PCRA petition. PCRA Court Opinion, 9/1/17, at 7–8; ***see also***

***Commonwealth v. Dennis***, 17 A.3d 297 305 (Pa. 2011) (stating that where

the record supports the PCRA court's credibility determinations, such

determinations are binding on a reviewing court). Accordingly, we do not

disturb the PCRA court's findings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/8/18</u>